UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

DANNA AMERICA CORONEL-
HERNANDEZ,                                                                          Petitioner,

v.                                                                     Civil Action No. 4:26-cv-20-DJH

JASON WOOSLEY, Jailer, Grayson County
Detention Center et al.,                                                            Respondents.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Petitioner Danna America Coronel-Hernandez, a noncitizen resident of Indiana currently detained in the Western District of Kentucky, seeks a writ of habeas corpus pending removal proceedings. She alleges that her detention by immigration authorities violates the Immigration and Nationality Act, the Due Process Clause of the Fifth Amendment, and agency regulations; she also alleges that her arrest by local law enforcement violated the Fourth Amendment. (Docket No. 11) The Court held a show-cause hearing (D.N. 17) after the parties submitted briefs setting out their respective legal arguments (D.N. 13; D.N. 16). After careful consideration, the Court will grant Coronel-Hernandez's amended petition for the reasons explained below.

**I.**

Coronel-Hernandez is a "22-year-old noncitizen who has resided in the United States for approximately sixteen years, having entered the country as a child at the age of six." (D.N. 11, PageID.145 ¶ 21) She is a citizen and national of Mexico. (D.N. 13-1, PageID.202) Coronel-Hernandez has "lived continuously in the United States and has established substantial family, employment, and community ties." (D.N. 11, PageID.147 ¶ 28) Additionally, her fiancé is a U.S. citizen. (*Id.*) She is nearly five months pregnant. (*Id.* ¶ 29) Prior to her detention, Coronel-

1

Hernandez lived in Westfield, Indiana, and had "been steadily employed at Chipotle for at least two years." (*Id.*) On December 23, 2025, Coronel-Hernandez was "arrested in Noblesville, Indiana, by local law enforcement for driving without a license." (*Id.* ¶ 30) She "was taken into custody at the Hamilton County Jail, where she was informed that U.S. Immigration and Customs Enforcement [ICE] had placed an immigration detainer on her." (*Id.*; *see* D.N. 13-1, PageID.202) Coronel-Hernandez appeared before a local judge on December 29, 2025, where bond was set for $250; the bond was paid the next day. (D.N. 11, PageID.147 ¶ 31)

On December 31, 2025, an administrative warrant was issued authorizing Coronel-Hernandez's detention pursuant to 8 U.S.C. § 1226. (D.N. 15-1, PageID.274) Coronel-Hernandez was placed in removal proceedings via a Notice to Appear, which charged her as "an alien present in the United States who has not been admitted or paroled." (D.N. 15-2, PageID.275) ICE then transferred Coronel-Hernandez from the Hamilton County Jail to Grayson County Detention Center, where she remains detained. (D.N. 11, PageID.148 ¶ 32) "While in custody, [Coronel-Hernandez] was informed that a hearing is scheduled for February 3, 2026," before an immigration court. (*Id.*, PageID.149 ¶ 35; *see* D.N. 15-2, PageID.275) Coronel-Hernandez states that she experiences health complications while detained, "particularly in light of her ongoing pregnancy."[1] (D.N. 11, PageID.148 ¶ 33)

Coronel-Hernandez seeks a writ of habeas corpus against Grayson County Jailer Jason Woosley, Chicago ICE Field Office Director Samuel Olson, Acting Director of ICE Todd Lyons, Department of Homeland Security Secretary Kristi Noem, and U.S. Attorney General Pamela Bondi. (*Id.*, PageID.145–46 ¶¶ 22–26) Coronel-Hernandez contends that her detention without a bond hearing violates the Immigration and Nationality Act, 8 U.S.C. § 1225–1226, and agency

---

[1] Coronel-Hernandez states that she missed a scheduled prenatal appointment and "has not been provided with a diet appropriate for pregnancy." (D.N. 11, PageID.148 ¶ 33)

regulations; due process under the Fifth Amendment; and a class-action judgment from the Central District of California. (*See id.*, PageID.162–67 ¶¶ 65–81) Coronel-Hernandez also asserts that her arrest by local law enforcement violated the Fourth Amendment.[2] (*See id.*, PageID.161–62 ¶¶ 61–64) She asks the Court to order her immediate release or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226. (*See id.*, PageID.172 ¶¶ 1–2) Respondents argue that (1) the Court lacks jurisdiction to hear the habeas petition under 8 U.S.C. § 1252(b)(9) in light of a recent decision issued by the Third Circuit Court of Appeals; (2) Coronel-Hernandez is properly detained under § 1225(b)(2) as an applicant for admission who is seeking admission; (3) the class-action judgment from the Central District of California is "not binding [or] applicable" to the petition; (4) the Administrative Procedure Act is not applicable; (5) "[r]elief [u]nder the Fourth Amendment is not available; (6) Respondents' "reading of Section 1225(b)(2) does not render Section 1226(c) superfluous"; and (7) Coronel-Hernandez's detention does not violate due process because she "was afforded all the process [s]he was due" under § 1225.[3] (*See* D.N. 13, PageID.184–98; D.N. 13-2, PageID.237, 239)

## II.

**A.    Jurisdiction**

Citing 8 U.S.C. § 1252(b)(9), Respondents contend that the Court lacks jurisdiction to hear Coronel-Hernandez's claims. (*See* D.N. 13, PageID.184–88) Section 1252(b) states that

---

[2] Coronel-Hernandez primarily bases this claim on the alleged lack of an arrest warrant. (*See* D.N. 11, PageID.161–62 ¶¶ 62–63) The arrest warrant has since been filed in the record. (*See* D.N. 15-1, PageID.274)
[3] Respondents do not argue whether Coronel-Hernandez must exhaust her administrative remedies. (D.N. 13-2, PageID.235 n.4) Therefore, the Court will not address this issue.

> [w]ith respect to review of an order of removal . . . the following requirements apply:
>
> . . . .
>
> (9) Consolidation of questions for judicial review
> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision . . . , to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).  The Court has previously observed that § 1252(b)(9) does not bar jurisdiction under these circumstances.  *See Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *2 n.5 (W.D. Ky. Nov. 4, 2025), *appeal docketed*, No. 25-6167 (6th Cir. Dec. 29, 2025) ("[T]he Supreme Court has held that § 1252(b)(9) does not prohibit courts from hearing cases challenging whether bond hearings are required in removal proceedings." (citing *Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018))); *see also Singh v. Lewis*, No. 4:25-cv-133-DJH, 2025 WL 3298080, at *4 (W.D. Ky. Nov. 26, 2025) ("[Section] 1252(b)(9) applies only '[w]ith respect to review of an order of removal.'"  (second alteration in original) (quoting 8 U.S.C. § 1252(b))).

Respondents rely on a recent decision by the Third Circuit Court of Appeals, *Khalil v. President, United States of America*, Nos. 25-2162 & 25-2357, 2026 WL 111933 (3d Cir. Jan. 15, 2026) (per curiam).  (*See* D.N. 13, PageID.184)  Based on that decision, Respondents argue that "Section 1252(b)(9) bars [the Court] from answering" the question of which statute authorizes Coronel-Hernandez's detention "because it can be raised in a petition for review before a circuit court."  (*Id.*, PageID.186 (citing 8 U.S.C. § 1252(a)(2)(D)))  In *Khalil*, the petitioner was a lawful permanent resident and an "outspoken advocate for Palestinian human rights."  2026 WL 111933 at *1.  The Secretary of State determined that Khalil was removable from the United States pursuant to a provision of the Immigration and Nationality Act allowing removal of noncitizens

4

whose "presence or activities in the United States . . . would have potentially serious adverse foreign policy consequences for the United States." *Id.* at *2 (alteration in original) (quoting 8 U.S.C. § 1227(a)(4)(C)). The government detained Khalil and served him with a Notice to Appear; he then sought habeas relief in federal court, challenging his detention, removal, and "a broad array of alleged governmental misconduct under the First and Fifth Amendments," the Administrative Procedure Act, and Supreme Court precedent. *Id.* at *10; *see id.* at *2. The Third Circuit held that § 1252(b)(9) stripped the district court of jurisdiction over Khalil's petition, finding that Khalil's claims were not "wholly collateral to the removal process" but rather "inextricably linked to it" for purposes of § 1252(b)(9). *Id.* at *9 (internal quotation marks and citation omitted); *see id.* at *9–10. The panel thus reasoned that the claims could be raised later in a petition for review of a final order of removal. *See id.* at *10 ("[A]ddressing any of [Khalil's] claims would require deciding whether removing [him] would be unlawful—the very issue decided through the [petition-for-review] process.").

Here, Coronel-Hernandez's challenge to her detention is not "inextricably linked" to her removal proceedings. *Id.* at *9. Unlike the petitioner in *Khalil*, she is not challenging "whether removing [her] would be unlawful." *Id.* at *10. Instead, Coronel-Hernandez challenges Respondents' authority to detain her without a bond hearing. (*See* D.N. 11, PageID.136 ¶ 2) That issue "does not get channeled into the [petition-for-review] process." *Khalil*, 2026 WL 111933, at *12 (citations omitted); *see also id.* (distinguishing Khalil's case from another in which the petitioners were "not challenging the decision to detain them but only the bond procedures used" (internal quotation marks and citation omitted)). Thus, even if *Khalil* were binding on this Court, it would be distinguishable. Accordingly, the Court has jurisdiction to hear Coronel-Hernandez's claims. *See Kourouma v. Jamison*, No. 26-0182-KSM, 2026 WL 120208, at *3–4 (E.D. Pa. Jan.

15, 2026) (distinguishing *Khalil* from the petitioner's case challenging his detention without a bond hearing and finding that § 1252(b)(9) did not bar jurisdiction).

**B.     Immigration and Nationality Act**

Coronel-Hernandez asserts that § 1226(a), not § 1225(b)(2)(A), governs her detention and entitles her to immediate release or a bond hearing.  (*See* D.N. 11, PageID.136–37 ¶ 2) Respondents argue that § 1225 authorizes Coronel-Hernandez's detention, incorporating by reference arguments in the appellants' brief from *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771 (E.D. Mich. 2025), *appeal docketed*, No. 25-1965 (6th Cir. Oct. 27, 2025).  (*See generally* D.N. 13-2)

Respondents' arguments are nearly identical to those made in *Alonso*.  The Court thus summarizes and incorporates by reference its reasoning and determination from that decision. There, the Court found that the petitioner was an applicant for admission as an "alien present in the United States who ha[d] not been admitted," 2025 WL 3083920 at *5 (quoting § 1225(a)(1)), but that he was not "seeking admission" because he had resided in the United States for an extended period.  *See id.* at *5, *7.  Likewise, Coronel-Hernandez is an applicant for admission because she is an "alien present in the United States who has not been admitted," § 1225(a)(1) (*see* D.N. 15-2, PageID.275), but she is not "seeking admission" for purposes of § 1225(b)(2)(A) because she has lived in the United States for approximately sixteen years.  *See Alonso*, 2025 WL 3083920, at *6 ("The phrase 'seeking admission,' though not defined in the statute, 'implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.'" (quoting *Lopez-Campos*, 797 F. Supp. 3d at 781)); *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025) ("[T]he category of applicants for admission covered by § 1225(b)(2) who are 'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended

just after entering."). This Court and others have consistently found § 1225(b)(2) inapplicable to petitioners like Coronel-Hernandez who resided in the United States for extended periods before their arrests. *See, e.g.*, *Alonso*, 2025 WL 3083920, at *1 (approximately twelve years); *Amaya v. Raycraft*, No. 25-13539, 2025 WL 3530273, at *1 (E.D. Mich. Dec. 9, 2025) (eighteen years); *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025) (twenty years).

Respondents additionally argue that their position "does not render Section 1226(c) superfluous." (D.N. 13-2, PageID.255) They claim that "[a]lthough Section 1226(c) and Section 1225(b)(2) overlap for some aliens, each provision has independent effect." (*Id.*, PageID.254) As the Court explained in *Alonso*, the recent amendment to § 1226, codified in § 1226(c)(1)(E), "applies to noncitizens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A) and who have been charged with, arrested for, or convicted of 'burglary, theft, larceny, shoplifting, or assault of a law enforcement officer . . . , or any crime that results in death or serious bodily injury to another person.'" 2025 WL 3083920 at *6 (quoting § 1226(c)(1)(E)(ii)). "Considering that § 1182(a)(6)(A)(i) specifically refers to aliens 'present in the United States without being admitted or paroled,' and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized their detention as well." *Pizarro Reyes*, 2025 WL 2609425, at *5 (citation omitted). Thus, despite overlap between § 1225(b) and § 1226(c) regarding noncitizens who have not been admitted or paroled, Respondents' reading of § 1225 would render § 1226(c) superfluous. *See id.* ("[B]ecause an alien present in the United States without admittance would be unlikely to prove that they are 'clearly and beyond a doubt entitled to be admitted [under § 1225(b)(2)(A)],' ICE would never need to rely on § 1226(c)(1)(E) to detain them." (citations omitted)); *Hurtado v.*

7

*Jamison*, No. 25-6717, 2025 WL 3678432, at *5 (E.D. Pa. Dec. 18, 2025) ("[T]hese recent amendments drive home the conclusion that Congress never intended § 1225(b)(2)(A) to apply to noncitizens who have been permitted to come into [the United States], on parole or otherwise, and have been residing in this country for years.").

Respondents also maintain that their position is supported by the Supreme Court's opinion in *Jennings*. (*See* D.N. 13-2, PageID.261–63) *Jennings* considered whether §§ 1225(b), 1226(a), and 1226(c) require providing periodic bond hearings to noncitizens detained under those provisions. *See* 583 U.S. at 286, 291. As Respondents note, "the Supreme Court [in *Jennings*] did not rule on whether non-admitted or inadmissible aliens fell within Section 1226(a) as opposed to Section 1225(b)(2)(A)." (D.N. 13-2, PageID.263) Whether Respondents' position is consistent with *Jennings* is thus not dispositive here. In any event, *Jennings* stated that "§ 1226 applies to aliens already present in the United States[, and §] 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." 583 U.S. at 303. The opinion also described § 1225(b)(1) and (b)(2) as "authoriz[ing] the [g]overnment to detain certain aliens *seeking admission* into the [United States]." *Id.* at 289 (emphasis added). Thus, the Court's reading of the relevant statutes is consistent with *Jennings*.

In accordance with its prior decisions addressing the same issue, the Court concludes that Coronel-Hernandez is detained under § 1226(a), not § 1225(b)(2), and is thus entitled to a bond hearing. *See Singh*, 2025 WL 3298080, at *5; *Lopez v. Olson*, No. 3:25-cv-654-DJH, 2025 WL 3217036, at *3 (W.D. Ky. Nov. 18, 2025), *appeal docketed*, No. 26-5047 (6th Cir. Jan. 20, 2026); *Alonso*, 2025 WL 3083920, at *8.

C.  **Class-Action Judgment**

Coronel-Hernandez asserts that she "is a member of [a] nationwide class certified in" the Central District of California and that "[a]s a class member, [her] rights have been adjudicated by a Final Judgment [declaring] that [her] detention is governed by 8 U.S.C. § 1226(a)." (D.N. 11, PageID.162 ¶ 65)  Respondents argue that the class action is neither applicable nor binding here on several grounds.  (*See* D.N. 13, PageID.188–96)

Recently, final judgment was entered for a class defined as

> [a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713982, at *1 (C.D. Cal. Dec. 18, 2025), *appeal filed*, No. 25-7958 (9th Cir. Dec. 19, 2025).  The final judgment "(1) declared that the Department of Homeland Security['s] . . . new policy of deeming noncitizens arrested in the United States and charged with being inadmissible as 'applicant[s] for admission' subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) conflicted with the text of the Immigration [and] Nationality Act . . . and (2) vacated that policy under the Administrative Procedure Act." *Falcon v. Wofford*, No. 1:26-cv-00181-WBS-EFB, 2026 WL 171927, at *1 (E.D. Cal. Jan. 22, 2026); *see Bautista*, 2025 WL 3713982, at *3–4.  Courts in this District have found it "not necessary . . . to adopt the position of the Central District of California" and have instead reviewed habeas petitions "on the[ir] independent merits." *E.g.*, *Rodriguez v. Noem*, No. 4:25-cv-176-RGJ, 2026 WL 116412, at *9 n.8 (W.D. Ky. Jan. 15, 2026); *Meza v. Lewis*, No. 4:25-cv-171-RGJ, 2026 WL 92102, at *10 n.8 (W.D. Ky. Jan. 13, 2026) (same).  Accordingly, the Court will "rest[] its decision" on the merits of Coronel-Hernandez's amended petition. *Rodriguez*, 2026 WL 116412,

at *9 n.8 (quoting *Santuario v. Bondi*, No. 25-4296 (JRT/JFD), 2025 WL 3469577, at *2 n.4 (D. Minn. Dec. 2, 2025)).

**D.     Due Process**

Coronel-Hernandez also asserts that her detention violates due process under the Fifth Amendment.  (*See* D.N. 11, PageID.165–67 ¶¶ 74–81)  Respondents argue that "Section 1225(b)(2) does not afford Petitioner the ability to obtain release on bond, and so the Due Process Clause does not either."  (D.N. 13-2, PageID.264)  Because Coronel-Hernandez is detained under § 1226(a), not § 1225(b)(2), Respondents' argument as to the due process required by § 1225(b)(2) is futile.  *Singh*, 2025 WL 3298080, at *5.

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings.  *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam) (citation omitted).  To determine whether civil detention violates a petitioner's due process rights, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Alonso*, 2025 WL 3083920, at *8 (citing *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *6 (W.D. Ky. Sep. 19, 2025)).  Under that test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Barrera*, 2025 WL 2690565, at *6 (citing *Mathews*, 424 U.S. at 335).

Like the petitioners in *Barrera* and other cases recently before the Court, Coronel-Hernandez "has a significant private interest in not being detained."  *Id.*; *see Singh*, 2025 WL 3298080, at *6; *Alonso*, 2025 WL 3083920, at *9.  Moreover, "the risk of erroneously

10

depriving [Coronel-Hernandez] of [her] freedom is high if the [immigration judge] fails to assess [her] risk of flight and dangerousness." *Lopez-Campos*, 797 F. Supp. 3d at 785; *see* 8 C.F.R. § 1236.1(c)(8), (d)(1). Finally, the Court "recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings." *Barrera*, 2025 WL 2690565, at *7 (citation omitted). But a "routine bond hearing before an [immigration judge]" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that [the Department of Homeland Security] can readily follow here." *Hyppolite*, 2025 WL 2829511, at *15. Thus, because all three *Mathews* factors weigh in Coronel-Hernandez's favor, the Court concludes that her detention violates due process.[4] *See Singh*, 2025 WL 3298080, at *5–6; *Barrera*, 2025 WL 2690565, at *6–7.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Coronel-Hernandez's amended petition for a writ of habeas corpus (D.N. 11) is **GRANTED**. Respondents are **DIRECTED** to immediately release Coronel-Hernandez, and, in

---

[4] In light of this conclusion, the Court need not analyze the Fourth Amendment and Administrative Procedure Act allegations. *See, e.g.*, *Padilla-Ugsha v. Ladwig*, No. 2:25-cv-03045-TLP-cgc, 2025 WL 3638007, at *8 (W.D. Tenn. Dec. 15, 2025) ("Since the Court agrees with Petitioner's arguments that Respondent has detained him under the wrong provision of the [Immigration and Nationality Act] and that his detention without a bond hearing violates his procedural due process rights, the Court need not address the . . . Fourth Amendment claim."); *Rivera Esperanza v. Francis*, No. 25-CV-8727, 2025 WL 3513983, at *9 n.4 (S.D.N.Y. Dec. 8, 2025) ("Having found that [Petitioner]'s rights under the Fifth Amendment were violated when the Government detained him . . . , the Court does not reach his alternative arguments that his detention violated the Fourth Amendment or the [Immigration and Nationality Act]."); *Londono Perez v. Moniz*, No. 25-cv-13779-FDS, 2025 WL 3653846, at *2 (D. Mass. Dec. 17, 2025) (declining to reach claims under Fourth Amendment and Administrative Procedure Act after finding petitioner was entitled to a bond hearing).

the event she is arrested and re-detained, provide her with a bond hearing before a neutral Immigration Judge in accordance with 8 U.S.C. § 1226(a).  Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **January 29, 2026**.

    (2)    Upon receipt of the notice of compliance, this matter will be **CLOSED**.  Any party may move to reopen this matter to enforce the rulings made herein.

January 28, 2026

David J. Hale, Chief Judge
United States District Court